**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

**PHILADELPHIA INDEMNITY INSURANCE COMPANY,**

**Plaintiff/Counter-Defendant**

**v.** **No. 2:16-cv-02600-cgc**

**FEDEX FREIGHT, INC., DAVID F. RICKMAN**

**Defendants/Counter-Plaintiffs**

**MAGGIE SHORTER, and DAVID SHORTER,**

**Defendants.**

**ORDER GRANTING PHILADELPHIA INDEMNITY INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENYING FEDEX FREIGHT, INC. AND DAVID RICKMAN'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are Plaintiff/Counter-Defendant Philadelphia Indemnity Insurance Company's ("Philadelphia") Motion for Summary Judgment (Docket Entry "D.E." #34) and Defendants/Counter-Plaintiffs FedEx Freight, Inc. ("FedEx Freight") and David F. Rickman's ("Rickman") Motion for Summary Judgment (D.E. #36). The parties have consented to the jurisdiction of the United States Magistrate Judge. (D.E. #33). For the reasons set forth herein, Philadelphia's Motion for Summary Judgment is GRANTED and FedEx Freight and Rickman's Motion for Summary Judgment is DENIED.

## I. Background and Findings of Fact

The underlying action arises was filed by Defendants Maggie Shorter and David Shorter in Tennessee state court against FedEx Freight and Rickman ("State Complaint"). (D.E. #1-1). The State Complaint alleges that, on or about July 8, 2015, Mrs. Shorter was working as a security guard for Universal Protection Service, LLC ("Universal") at a FedEx Freight facility located at 461 Winchester Road in Memphis, Tennessee. (State Compl. ¶3) The State Complaint alleges that Mrs. Shorter sustained severe and permanent injuries, including the amputation of her right leg from the knee down and the permanent disfigurement of her left leg, after being struck by a FedEx Freight vehicle operated by Rickman. (State Compl. ¶¶ 6, 10). The State Complaint alleges that Ms. Shorter's injuries were proximately caused by Rickman's negligent operation of the FedEx Freight vehicle. (State Compl. ¶ 10). The State Complaint alleges that FedEx Freight is vicariously liable for Rickman's negligence under the doctrine of respondent superior. (State Compl. ¶ 6).

After the State Complaint was filed, FedEx Freight and Rickman tendered the Shorters' suit to Philadelphia and demanded a defense and indemnification. Philadelphia refused asserting that the Policy did not cover either. On July 20, 2016, Philadelphia filed a Complaint for Declaratory Judgment ("Complaint") in this Court pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure (D.E. #1). FedEx Freight and Rickman then filed a Counter-Complaint under 28 U.S.C. § 2201 and Rule 57 for Declaratory Judgment (D.E. #22). The Complaint alleges that, prior to the incident complained of in the State Complaint, on or about November 2013, FedEx Freight and Universal entered into a General Guard Security Agreement ("Agreement"). (Agreement, filed at D.E. #1-2, at 1, 9). Under the Agreement,

Universal agreed to provide security services for FedEx Freight facilities throughout the United States. (Agreement at 1). Section 9 of the Agreement, entitled "Indemnification," provides as follows:

> Section 9. Indemnification. [Universal] agrees to indemnify, defend and hold harmless FedEx [Freight], its directors, officers, and employees from any and all liabilities, damages, losses, expenses, demands, claims, suits, or judgments, including reasonable attorneys' fees and expenses, to the extent resulting from [Universal]'s negligence or willful misconduct in the performance of its obligations under this Agreement, including, but not limited to any claim for payment by a subcontractor, agent, or employee of [Universal]. [Universal]'s obligation to so indemnify, defend and hold harmless FedEx [Freight] shall survive the expiration or earlier termination of this Agreement.

(Agreement at 3-4).

Additionally, the Agreement provides that Universal shall "maintain Commercial General Liability insurance for bodily injury, and property damage, including contractual liability, products and completed operations; Broad Form Property Damage; Workers Compensation at statutory limits; Employers Liability Insurance; Personal Injury insurance, and Commercial Liability insurance if operating automotive vehicles as set out in attached Exhibit C." (Agreement at 4, § 10).

Exhibit A to the Agreement provides the Security Guard Responsibilities. (Agreement at 13). Of central importance to the instant case, the Agreement provides in Paragraph 19 as follows: "**For Safety reasons do not walk between double trailers unless Tractor is "shut off and parking brake is applied. ALL** units exiting service center will stop to allow Security Officer to verify equipment information, record the tractor, trailer(s) and dolly numbers for units exiting truck gate on truck registration log.**"** (Exh. A. at 13). Exhibit C to the Agreement further provides, in pertinent part, as follows:

> INSURANCE CERTIFICATE AND POLICIES
> . . . .
> (c) Commercial Automobile Liability Insurance covering [Universal]'s owned, and non-owned and hire vehicles, naming FedEx [Freight] and affiliated companies, and their respective officers, directors, and employees as additional insured, as their interests may appear under the terms of this Agreement, including bodily injury and property damage endorsements, with a combined single limit of not less than $1,000,000.00.

(Agreement at Exh. C).

Further, in order to comply with their requirements under the Agreement, Universal procured a policy of insurance from Philadelphia bearing the policy number PHPK1224836 ("Policy"), which provided commercial auto insurance coverage for a policy period of September 1, 2014 to September 1, 2015. (D.E. #1-3). There is no dispute that the Policy was in full force on or about July 8, 2015 when Mrs. Shorter sustained injuries after being struck by the FedEx Freight truck. (*Id*.) The Policy issued by Philadelphia to Universal consists of the Business Auto Declarations and the Business Auto Coverage Form. (*Id*). The Policy states, in pertinent part:

> **SECTION II – LIABILITY COVERAGE**
> **A. Coverage**
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> . . . .
>
> We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

**a.** You for any covered "auto".

**b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

. . . .

**B. Exclusions**

The insurance does not apply to any of the following:

. . . .

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a. Assumed in a contract or agreement that is an “insured contract” provided the “bodily injury” or property

damage" occurs subsequent to the execution of the contract or agreement; or

b. That the "insured" would have in the absence of the contract or agreement.

. . . .

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

(1) Employment by the "insured"; or

(2) Performing the duties related to the conduct of the "insured's" business; or

. . . .

This exclusion applies:

(1) Whether the "insured" may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract." For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

. . . .

**SECTION V – Definitions**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

. . . .

**F.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker."
**G.** "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.
**H.** "Insured contract" means:
**1.** A lease of premises;
**2.** A sidetrack agreement;
**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality)under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of contract or agreement.
**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that party of any contract or agreement:

. . .

**b.** That pertains to the loan, lease or rental of an "auto" to you or any of your "employees" if the "auto" is loaned, lease or rented with a driver; or

**c.** That holds an organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or

territory that person or organization is authorized to serve by public authority.

. . . .

**J**. "Loss" means direct and accidental loss or damage.

. . . .

**N**. "Suit" means a civil proceeding in which:
1. Damages because of "bodily injury" or "property damage"; or
. . . .
to which this insurance applies, are alleged.

(Policy 2-3, 10).

Additionally, on June 30, 2015, a Certificate of Liability Insurance was issued by Wood, Gutmann & Bogart to FedEx Freight confirming that it and its affiliated companies, their respective officers, directors and employees are additional insureds "per the attached endorsements as required by written contract subject to the terms & conditions of the policy." The Blanket Additional Insured Endorsement sets forth as follows:

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY**

. . . .

Section II – Liability Coverage – A.1. WHO IS AN INSURED provision is amended by the addition of the following:

e. Any person or organization for whom you are required by an "insured contract" to provide insurance is an "insured," subject to the following additional provisions:

(1) The "insured contract" must be in effect during the policy period shown in the Declarations and must have been executed prior to the "bodily injury" or "property damage."

(2) This person or organization is an "insured" only to the extent you are liable due to your ongoing operations for that insured, whether the work is performed by you or for you, and only to the extent you are held liable for an "accident"

occurring while a covered "auto" is being driven by you or one of your employees;

(3) There is no coverage provided to this person or organization for "bodily injury" to its employees or for "property damages" to its property.

(4) Coverage for this person or organization shall be limited to the extent of your negligence or fault according to the applicable principles of comparative negligence or fault.

(5) The defense of any claim or "suit" must be tendered by this person or organization as soon as practicable to all other insurers which potentially provide insurance for such claim or "suit."

(6) The coverage provided will not exceed the lesser of:
(a) The coverage and/or limits of this policy; or
(b) The coverage and/or limits required by the "insured contract."

(7) A person's or organization's status as an "insured" under this subparagraph d ends when your operations for that "insured" are completed.

All other terms and conditions of this Policy remand unchanged.

(*Id*.)

Based on these provisions, the parties argue as follows. Philadelphia contends that it has no duty to defend FedEx Freight and Rickman because neither meet the definition of an "insured" under Section V, Paragraph A.1.e in the Agreement between Universal and Philadelphia. Further, Philadelphia contends that it owes no duty to defend or indemnify FedEx Freight and Rickman because the Agreement does not qualify as an "insured contract" for FedEx Freight and Rickman to be insured under the Blanket Additional Insured Endorsement.

In contrast, FedEx Freight argues that Section 9 of the Agreement requires Universal to indemnify FedEx Freight in the event of Universal's negligence. Because Section 10 of the Agreement requires Universal to name FedEx Freight as an additional insured, Philadelphia is required to defend FedEx Freight as an additional insured in an action arising out of Universal's negligence. FedEx Freight contends Universal was negligent because Shorter walked between

two trailers when the accident occurred. In addition, FedEx Freight contends that the Blanket Additional Insured Endorsement is ambiguous and this ambiguity favors indemnification because, under California law, ambiguous contracts are construed in favor of providing coverage.

**II. Summary Judgment Standard and Choice of Law**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 (1986). The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id*. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

The movant has the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-moving party to "go beyond the pleadings" and "designate specific facts showing there is a genuine issue for trial." *Id.* at 324. The "adverse party may not rest upon the mere allegations of denials of [its] pleases, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

P. 56(e). A genuine issue for trial exists if evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is which the metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 474 U.S. 574, 586 (1986).

**III. Analysis and Conclusion of Law**

The disposition of the summary judgment motions in this case relies upon the interpretation of the Agreement and Policy above. As jurisdiction in this case is based upon diversity of citizenship, this Court must apply the choice-of-law rules of the forum state of Tennessee. *See Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). In insurance coverage disputes, Tennessee follows the *lex loci contractus* doctrine, in which the substantive law of the state where the insurance policy was issued and delivered controls. *Nelson v. Nelson*, 409 S.W.3d 629, 632 (Tenn. Ct. App. 2013) (citations omitted); *Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). Philadelphia delivered the Policy to Universal in California. (D.E. #1-3 at 1). Accordingly, California law applies in interpreting the Policy, which the parties do not dispute. (D.E. ## 34-2 at 9, 36-1 at 6). The Agreement between FedEx and Universal contains a contractual provision that states that it "shall be governed by and interpreted in accordance with the laws of Arkansas." (Agreement at 6, § 15(d)).

In the instant case, FedEx Freight and Universal entered into the Agreement stating that Universal would indemnify, defend, and hold harmless FedEx Freight from Universal's negligence or willful misconduct. (Agreement at 3, § 9). The Agreement provided that Universal security guards were not to walk between double trailers for safety reasons unless the

tractor was shut off and the parking brake was applied. (Agreement at 13, § 19). The State Complaint alleges that Mrs. Shorter was working as a Universal security guard when Rickman stopped his Peterbilt Motors Tractor with two trailers at the guard shack. (State Complaint ¶ 4). After checking the rear trailer, Mrs. Shorter alleges that she *walked between the two trailers to check the seal number on the trailer directly behind the cab of the Defendant's truck*." (*Id.*) Mrs. Shorter further alleges that Rickman pulled the truck forward while she was between the two trailers and, although she attempted to move, she was struck and run over by the rear trailer. (*Id.*) Thus, according to her allegations in the State Complaint, she violated the guidelines set forth in the Agreement when she sustained her injuries.

Under Arkansas law, "in order to prevail on a claim of negligence, the plaintiff must prove that the defendant owed a duty to the plaintiff, that the defendant breached the duty, and that the breach was the proximate cause of the plaintiff's injuries." *Robinson Nursing and Rehabilitation Center, LLC v. Phillips*, 519 S.W.3d 291, 302 (Ark. 2017) (citing *Branscumb v. Freeman*, 200 S.W.3d 411 (2004)). Here, the Agreement set forth a legal duty of care, which Mrs. Shorter does not appear to dispute she breached, although Mrs. Shorter's negligence is not at issue in this matter.

Yet, as Philadelphia and the Shorters contend, Rickman's actions should also be analyzed under the doctrine of comparative fault. "The question of what duty, if any, is owed a plaintiff alleging negligence is always a question of law and never one for the jury." *Marlar v. Daniel*, 247 S.W.3d 473, 508 (Ark. 2007) (*Lawhon Farm Supply, Inc. v. Hayes*, 870 S.W.2d 729 (1994); *Keck v. American Employment Agency, Inc.*, 652 S.W.2d 2 (1983)). "Duty is a concept that arises out of the recognition that relations between individuals may impose upon one a legal obligation for the other." *Marlar*, 247 S.W.3d at 508 (citing *Shannon v. Wilson*, 947 S.W.2d

349, 356-57 (1997)). Under the Agreement between FedEx Freight and Universal, while Exhibit A is titled "Security Guard Responsibilities," it explicitly requires of FedEx Freight employees that "**ALL** units exiting service center will stop to allow Security Officer to verify equipment information, record the tractor, trailer(s) and dolly numbers for units exiting truck gate on truck registration log." (Agreement at 13, § 19). It was under these terms that Universal was "willing and able to perform the services for FedEx [Freight] in accordance with the terms of this Agreement." (Agreement at 1, § 2). Thus, Rickman was under a contractual duty to Mrs. Shorter as well to have stopped his vehicle, turned it off, and secured it with the parking brake for her to be able to safely perform her security checks. It also appears undisputed that Rickman breached that duty, although Rickman's comparative fault is also not at issue in this matter.

In the context of this relationship between Mrs. Shorter, Universal, FedEx Freight, and Rickman under the Agreement, the Court may turn to the relationship subsequently created between FedEx Freight, Rickman and Philadelphia under the Policy. The Policy was procured by Universal as contemplated by Sections 9 and 10 of the Agreement to for Universal to "defend, indemnify, and hold harmless" FedEx Freight "from [Universal]'s negligence or willful misconduct in the performance of its obligations under this Agreement, including, but not limited to any claim for payment by a subcontractor, agent, or employee of [Universal]." (Agreement at 3-4). The Commercial Auto Policy that Universal purchased to meet that obligation defines all covered autos as well as the liability coverage, including who is an "insured." (*Id*. at 1-4). Under California law, the provisions of an insurance policy "are to be understood in their ordinary and popular sense . . . unless used by the parties in a technical sense, or unless a special meaning is given to them by usage." Cal. Civ. Code § 1644.

For coverage to extend in any manner to FedEx Freight and Rickman under the Policy, they must meet the definition of an "insured" either under the initial insuring agreement of the Policy or the subsequently issued Certificate of Liability Insurance with its Blanked Additional Insured Endorsement pertaining to FedEx Freight and its employees. The initial insuring agreement of the Policy defines "Who Is An Insured," but the three categories clearly do not apply to FedEx Freight and Rickman (and are not asserted by FedEx and Rickman to apply). The Blanket Additional Insured Endorsement amends the language of the initial insuring agreement to add an additional category of persons or organizations that would qualify as an "insured" under the "Who Is An Insured" provision.

To qualify under that provision, the Agreement between FedEx Freight and Universal must qualify as an "insured contract." An "insured contract" is, in pertinent part, "[t]hat part of any other contract or agreement pertaining to your business . . . under which you assume tort liability of another to pay for 'bodily injury' or 'property damage' to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." (Policy at 11, § V.H.5). The Policy states that, "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." (Policy at 1). The Named Insured shown in the Declarations is "Universal Services of America, Inc. / Universal Group Holdings, LLC / Universal Midco, LLC."

Under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." Cal. Civ. Code § 1641. Accordingly, taking those provisions together, the plain language of the Policy states that, to qualify as an "insured contract," Universal would have to have assumed the tort liability of a third party. The Agreement does not contain such an assumption of third-party

liability by Universal. Thus, the Agreement does not qualify as an "insured contract" for FedEx Freight and Rickman to be insured under the Policy.

Further, even if the Agreement were an "insured contract," the Blanket Additional Insured Endorsement states that the "person or organization is an 'insured' . . . only to the extent you are held liable for an 'accident' occurring while a covered 'auto' is being driven by you or one of your employees." (Policy at 16). As set forth above, "you" and "your" are defined under the Policy as Universal. Here, the FedEx Freight truck that caused bodily injury to Mrs. Shorter was undisputedly being driven by Rickman, who is not one of Universal's employees. Thus, coverage would also not extend under the Policy under the Blanket Additional Insured Endorsement under Section II.e.(4).

For the reasons set forth above, the Court concludes as a matter of law that the Policy does not obligate Philadelphia Indemnity Insurance Company to furnish legal counsel or otherwise provide a defense on behalf of David F. Rickman and FedEx Freight, Inc. in the action filed by the Maggie and David in the Circuit Court of Shelby County, Tennessee bearing the docket number CT-001593-15. Further, the Court concludes as a matter of law that no coverage or indemnification is afforded to David F. Rickman and FedEx Freight, Inc. under the policy of insurance issued by Philadelphia Indemnity Insurance Company to Universal Protection Service, LLC, policy number PHPK1224836 for the claims and demands made in the above-mentioned case.

## IV. Conclusion

For the reasons set forth herein, Philadelphia's Motion for Summary Judgment is GRANTED and FedEx Freight and Rickman's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED** this 8th day of November, 2017.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE